LUIS FELICIER, ETC., Plaintiff and Appellee, v. RAFAEL DOMÍNGUEZ, Defendant and Appellant.

No. 8057. Argued February 12, 1940.—Decided March 8, 1940.

*Villamil & Santana Becerra* for appellant. *Faustino R. Aponte* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for damages where judgment was rendered against the defendant who was ordered to pay to the plaintiff $1,500, plus costs and $300 as attorney's fees. The defendant has appealed and the plaintiff has moved for the dismissal of the appeal as frivolous, and for the imposition of costs and attorney's fees.

The record of the appeal was filed on August 21, 1939. The appellant has requested several extensions of time and on November 30, 1939, finally filed his brief. The motion

to dismiss was filed on the 16th of the following December and was heard on the 12th of February last with the appearance and argument of counsel for both sides.

In the complaint it is briefly alleged that the plaintiff is 6 years old; that the defendant is a public carrier owning motor buses which ply between Humacao and Central Pasto Viejo of the above city; that on April 6, 1937, the plaintiff, in front of the store of the sugar factory, climbed on the running board of one of said motor buses traveling in the direction of the above factory, and that owing to the careless handling of the motor bus by the employee of the defendant that negligently allowed the plaintiff to travel on the place mentioned, the plaintiff was thrown out into the road and had his right leg fractured.

The defendant in his answer admitted that the accident had taken place but denied that the same was due to his negligence, stating that, on the contrary, the same was due to the ''negligence and intrusion'' of the plaintiff ''by acting against the law and the natural instinct of self-preservation, holding on to the rear of the motor bus on its right side, slipping off to the ground, all of which happening without the chauffeur or any other employee of the defendant being able to notice it, owing to the fact that, besides the intruder acting slyly, the blinds of the bus were pulled down against the weather, as it had begun to drizzle shortly before.''

The case went to trial and the court weighed the evidence heard as follows:

''The evidence for the plaintiff tends to show the following facts: that the defendant at the time of the accident was the owner of jitney No. 590; that on April 6, 1937, this jitney was used in the transportation of passengers between Humacao and Central Pasto Viejo; that said jitney was being driven by chauffeur Benito Rivera, an employee of the defendant; that chauffeur Benito Rivera, in the trip from Humacao to Central Pasto Viejo, stopped in front of a store and called the child Luis Felicier to bring a newspaper for somebody; that after taking the newspaper as ordered by the chauffeur he climbed on to the running board of the bus; that shortly

before the accident the child was playing with other little friends; that on the running board of the bus there were other people traveling besides the child Luis Felicier; that the child fell from the running board and that somebody shouted to the chauffeur to stop the bus; that the child was confined in the hospital of Humacao more than 30 days as the result of the accident; that after leaving the hospital he was sick for more than 2 months and during 6 months he walked on crutches; that the plaintiff has suffered injuries which he estimates at $5,000.

"The evidence for the defendant tends to show the following facts: that the child Luis Felicier was hanging on to the right side of the jitney driven by Benito Rivera; that the place where the .child could hold fast was five or six feet high; that nobody was standing on the running board of the bus; that the accident was due to the carelessness and negligence of the minor Luis Felicier; that the chauffeur did not become aware that the child was holding on to the jitney; that the jitney blinds had been pulled down because it was raining; that the motorbus was repaired after the accident and its height was raised eight inches more.

"Upon a view taken by the court the motorbus was measured in front, in the middle and behind. In the opinion of the court the only question to be determined is whether the accident took place just as alleged by the plaintiff or as claimed by the defendant. Regarding its occurrence there is no discrepancy between the parties. The defendant admits that the accident happened at the time and place shown by the facts. The plaintiff mantains that the accident was due to the negligence and carelessness of the chauffeur by letting a child, seven years old about the time of the accident, travel on the running board of a jitney. The defendant, however, contends that the accident was due solely and exclusively to the child holding on to the right hand side of the bus without the chauffeur or anybody else therein becoming aware of the presence of the child or of his holding on to it. The court has carefully weighed the testimony of the witnesses both for the plaintiff and the defendant. From the manner of the witnesses for the plaintiff while testifying, from the logic and reasonableness of their statements, the court gives greater credence to their testimony than to that of the witnesses for the defendant. There is a fact that supports this belief: the size of the jitney compared with that of the child. It is the case of a child who about the time of the accident, judging from his present height, could scarcely be three feet high. There is nothing on the right

hand side of the jitney on which the child could climb so as to take hold of the rod (varilla) in the jitney five or six feet from the ground. It was impossible for a child of such height, while the jitney was moving, to reach an object beyond his reach. It is most probable that he climbed on the running board and that he fell while the motorbus was traveling along the road. It is still less probable that the child could have taken hold of the rod horizontally running round the jitney if its curtains had been pulled down. Undoubtedly, after complying with the request from the chauffeur to take a paper to somebody and as it was raining, the child took shelter inside the jitney standing on its running board.

"In the opinion of the court the plaintiff has shown the allegations of his complaint and it estimates the damages suffered by the plaintiff at $1,500.

"For the foregoing reasons, the court finds for the plaintiff and adjudges the defendant to pay to the plaintiff $1,500 besides the costs and $300 as attorney's fees."

The defendant and appellant assigns in his brief as the only error committed by the trial court that it considered the evidence for the plaintiff sufficient to sustain the complaint.

In his argument on the assignment he analyzes the statements made by the witnesses for the plaintiff and makes clever efforts to show their insufficiency. He also challenges the reasoning of the trial judge.

We know his reasoning. In our opinion it resists the attack. It is well to quote from the testimony of the witnesses for the plaintiff as follows:

From the plaintiff himself:

"Q.—Who is don Beno?—A.—The man who drives the jitney; he called me to bring a newspaper to don Paco Monge and I did so and the jitney remained there while purchases were taken down and I climbed into the jitney and then the jitney went into a ditch and I fell down. Q.—Where did you climb on? A.—On the running board. Q.—Did this happen after you had taken the paper? A.— Yes, sir. Q.—Where were you going? A.—Don Beno told me to climb up. Q.—Did you stay on in the jitney? A.—I did, don Beno told me that he was going to take me as far as Los Sapos."

Carlos Alicea testified:

"The chauffeur called this child to take from him a newspaper to the carpenter workshop near the track, whereupon the boy came and the chauffeur gave him the newspaper. Q.—Did you not see the boy while climbing ·into the jitney? A.—Yes, sir, I saw when he climbed and went on."

Later· on:

"Q.—Do you remember how many passengers were in the jitney? A.—Well, there were many passengers, it was carrying passengers in excess. . . . Q.—Was there any fare collector in the jitney at that time? A.—No, sir, there was none."

Américo Ramírez corroborates his testimony as follows:

"Q.—Were passengers standing? A.—There were. Q.—Were there people traveling on the running board? A.—Three were. Q.—Were there people on the running board.—A.—There were."

Julio Casado testified as follows:

"Q.—Which jitney? A.—A jitney driven by don Beno. Q.— Benito Rivera? A.—Yes, sir. And I know that this child (pointing out to Luis Felicier) was traveling on the running board and two or three more persons were traveling there. Q.—So that when the jitney passed by, you saw this child, Luis Felicier, on the running board? A.—Yes, sir."

Ramón Colón testified:

"Well, while standing in front of the gate, at the entrance to the Pasto Viejo mills, facing the jitney coming, I saw the boy fall. Q.—Whom do you mean by the boy? A.—Luis Felicier. Q.—From where did you see him fall? A.—From the jitney. Q.—Where from the jitney? A.—To the ground. Q.—On the road? A.—Yes, sir. Q.—What else do you know, do you know anything more? A.— Then I ran up to where the boy fell and shouted ·out to Benito to stop the jitney. Q.—Was Benito the chauffeur of the jitney? A.— Yes, sir. And I went on running and lifted the boy from the ground and took him to the clinic."

Lastly, the boy's father said:

"Q.—Was he cònfined in the hospital? A.—For thirty six days. Q.—In the municipal hospital of Humacao? A.—Yes, sir. Q.—Did

you visit him often? A.—Every day and every night. I did at night and his mother during the day. . . . Q.—How long did he stay in the home? A.—About three months in the home, warm poultices being applied to him and then for about six months he walked on crutches. Q.—Did the boy thereafter complain of pains? A.—Yes, sir. Q.—Did he complain while in the hospital? A.—He did. Q.— And after taking him to the home, did he still complain? A.—He used to complain very much while lying down; he remained two months laid up in bed and about six months walking on crutches.''

The fracture was corroborated, besides, by a radiograph and the measurements of the jitney referred to by the trial judge appear from the minutes of the view taken.

It is usually difficult to weigh the evidence in such cases because of the tendency to exaggerate apparent from the testimony for both sides; but as the testimony of the witnesses produced by the plaintiff was believed, without the slightest hint that the court was moved by passion, prejudice or bias, or that it committed manifest error, such testimony, in our opinion, is sufficient for the conclusion that the allegations of the complaint were shown at the trial and that the amounts fixed by the court for damages and for attorney's fees are not excessive.

Therefore, a dismissal is proper, without allowing the imposition of costs and attorney's fees requested by the appellee, because although we have reached the conclusion that the appeal could not prosper for want of justification, this does not imply obstinacy from the party in appealing, as he might have believed in good faith, as shown by the arguments in his brief, that he was right.

From the foregoing, the appeal must be dismissed as being frivolous and the judgment appealed from affirmed.